

IN THE COURT OF CRIMINAL APPEALS
OF TEXAS

NO. PD-1917-06

RAUL ADAM MARTINEZ JR., Appellant

v.

THE STATE OF TEXAS

ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE THIRTEENTH COURT OF APPEALS
HARRIS COUNTY

PRICE, J., filed a concurring opinion.

## CONCURRING OPINION

This case was tried over a year before the Supreme Court issued its opinion in *Missouri v. Seibert*.[1]  The appellant's brief in the court of appeals was filed a week before *Seibert*.[2]  The court of appeals's resolution of the appellant's only claim on appeal was thus hampered by a

---

[1]  542 U.S. 600 (2004).

[2]  *See Martinez v. State*, 204 S.W.3d 914, 924 n.19 (Tex. App.—Corpus Christi 2006) (Yanez, J., dissenting).

record that was developed *in anticipation* of a Supreme Court opinion, rather than in light of already-established Supreme Court precedent. There is no claim that the issue was not properly preserved for appeal, however, and *Seibert* would apply retroactively to any case pending on direct appeal, as this one was.[3] Once a defendant has shown that his statement was made as a result of custodial interrogation,[4] the State has the burden to establish compliance with *Miranda*.[5] I do not know whether that burden should extend to disproving circumstances that precede the *Miranda* warnings that might suffice, in contemplation of *Seibert*, to call the efficacy of those warnings into doubt. I am, therefore, not entirely unsympathetic with Judge Hervey's view of matters. However, the State itself has never complained that it has been saddled with an inappropriate burden of proof in this case. In any event, even were we to hold that the burden more appropriately falls upon the appellant to prove circumstances that would impugn the efficacy of otherwise valid *Miranda* warnings, I believe that on the record before us it can be said that he has carried that burden, if only barely.

---

[3] *Griffith v. Kentucky*, 479 U.S. 314 (1987).

[4] *See Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (State has no burden to show *Miranda* compliance unless record "clearly establishes" defendant's statement was product of custodial interrogation). Here, it is undisputed that the appellant was under arrest from the outset of his interaction with the police, and any inquiry of the appellant about the offense by the police after that, including during the polygraph examination, unquestionably constituted interrogation.

[5] *See Miranda v. Arizona*, 384 U.S. 436, 478 (1966) (statements made during custodial interrogation are inadmissible "unless and until [*Miranda*] warnings and waivers are demonstrated by the prosecution at trial[.]); *Colorado v. Connelly*, 479 U.S. 157, 167-68 (1986) (State has burden to show waiver of *Miranda* rights).

The debate in the court of appeals centered around which of the opinions in *Seibert* was the controlling one, the plurality opinion of Justice Souter or the narrower concurring opinion of Justice Kennedy. Applying the Souter plurality as authoritative, the majority of the court of appeals held that the appellant had failed to show that the pre-*Miranda* contact with the police, including the polygraph, undermined the effectiveness of the *Miranda* warnings.[6] Applying the Kennedy concurrence, which she deemed controlling, the dissenting justice would have held that the police deliberately failed to *Mirandize* the appellant before subjecting him to the polygraph examination, and took no curative measures to assure the efficacy of the subsequent warnings.[7] Without expressly resolving (or even addressing) this dispute in the lower court, the Court today simply declares Justice Kennedy's view of the law "persuasive," and seems to adopt it. I agree that we do not need to reach the issue of which opinion is controlling, since, in my view, the appellant should prevail under either test.

As both Judge Hervey and the court of appeals point out, we know almost nothing on the present record about the substance of the initial interrogation or the polygraph examination. Assuming for the sake of argument that the burden rests with the defendant, ordinarily this gap in the record would prove fatal to a *Seibert* claim, which on its face is predicated upon the fact that the police obtained a presumptively coerced *confession* before *Mirandizing* the suspect. Here, what little the record does reveal about the appellant's pre-*Miranda* contact with police

---

[6]

*Martinez v. State*, *supra*, at 918-921.

[7]

*Id*. at 924-28.

is that he steadfastly denied any involvement in the offense until after he was warned. But the record also shows that, after he submitted to the polygraph examination, the appellant was immediately informed that he had failed it. We do not know specifically in what respect his answers may have been deceptive, but we can be sure that the police told him they knew of his deception in an effort to wear down his resistance to confessing to them, by demonstrating to him that they already "had the goods" on him.[8] To me, this is the determinative circumstance in this case. It satisfies both the Souter and the Kennedy criteria for establishing an ineffective mid-interrogation *Miranda* warning.

In explaining why warnings given after a confession has already been elicited may not serve as the constitutionally adequate prophylaxis that *Miranda* envisioned, Justice Souter observed:

> After all, the reason that question-first is catching on is as obvious as its manifest purpose, which is to get a confession the suspect would not make if he understood his rights at the outset; the sensible underlying assumption is that with one confession in hand before the warnings, the interrogator can count on getting its duplicate, with trifling additional trouble. Upon hearing the warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again. A more likely reaction on a suspect's part would be perplexity about the reason for discussing rights at that point, bewilderment being an unpromising frame of mind for knowledgeable decision. What is worse, telling a suspect that "anything you

---

[8] Judge Hervey complains that the record does not indicate whether the appellant was *Mirandized* at the outset of the polygraph examination. Dissenting opinion, at 10 n.18. It is undisputed that the appellant was under arrest when he submitted to the polygraph examination, the quintessence of police interrogation. The State therefore had the burden to prove he had been *Mirandized* at this juncture. *See* n.5, *ante*. A silent record on this point must militate against the State.

> say can and will be used against you," without expressly excepting the statement just given, could lead to an entirely reasonable inference that what he has just said will be used, with subsequent silence being of no avail.[9]

The same "sensible underlying assumption" pertains to the interrogator's use of a failed polygraph. A suspect who has been interrogated and confronted with the fact that his denials did not pass a lie-detector test would not likely appreciate his right to remain silent, even once *Miranda* warnings are administered, when the police begin to "lead him over the same ground" with respect to which his mendacity has already been revealed. This is especially so if the tardy *Miranda* warnings cause him reasonably to believe that evidence of his mendacity on the polygraph examination *can and will* be used against him. A failed polygraph is practically as effective as a coerced confession in so demoralizing a suspect that subsequent *Miranda* warnings will lack their intended efficacy. I agree with the Court that, given the continuity of the appellant's interrogation and his interrogators,[10] "a reasonable person in [his] shoes would not have understood [mid-stream *Miranda* warnings] to convey a message that [he] retained a choice about continuing to talk."[11]

Justice Kennedy would require that the use of the question-first tactic was a deliberate choice of the police interrogators. The police waited more than six hours after questioning had

---

[9] *Seibert*, *supra*, at 613.

[10] Majority opinion, at 15-16.

[11] *Seibert*, *supra*, at 617.

begun to take the appellant to the magistrate to have him *Mirandized*. But they had him *Mirandized* immediately after informing him that he had failed the polygraph. It is fair to infer from these circumstances that the whole day's interrogation up to that point had been aimed *either* at eliciting a pre-*Miranda* confession that they could then have him repeat, or at demoralizing him to the point that a post-warning confession would be forthcoming. Indeed, it is hard to imagine what else could explain the lengthy delay in *Mirandizing* him after he was plainly under arrest and the police obviously desired to, and did in fact, question him about the offense. The Court is justified in its *de novo* conclusion that the police utilized a deliberate tactic, calculated to undermine the appellant's will to resist talking before *Miranda* warnings could steel his resolve.[12]

Both Justice Souter and Justice Kennedy would look to see whether some curative measures may have been taken.[13] I agree with the Court that there was no meaningful break in

---

[12] There is no dispute about the historical facts. Neither is there any application of law to fact that turns on the demeanor or credibility of Officer Sosa, the only witness at the suppression hearing. Although the facts were not as well developed as could be hoped for, the facts that *were* elicited were essentially unchallenged. Thus, the reviewing courts may review the question of the efficacy of the mid-stream *Miranda* warning *de novo*. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

[13] *See Seibert*, *supra*, at 616 (plurality opinion) (Seibert's interrogating officer, in administering *Miranda* warnings, "said nothing to counter the probable misimpression that the advice that anything Seibert said could be used against her also applied to the details of the inculpatory statement previously elicited. In particular, the police did not advise that her prior statement could not be used."); *id*. at 622 (Kennedy, J., concurring) ("For example, a substantial break in time and circumstances between the pre-warning statement and the *Miranda* warning may suffice in most circumstances, as it allows the accused to distinguish the two contexts and appreciate that the interrogation has taken a new turn. * * * Alternatively, an additional warning that explains the likely inadmissibility of the pre-warning custodial statement may be sufficient.")

the time or circumstances of the day-long interrogation sequence such that the demoralizing effects of the appellant's learning he had failed the polygraph examination would have worn off. Nor was the appellant informed as part of the *Miranda* warning he eventually received that failing the polygraph examination was not a circumstance that could be used against him at his trial (both because it came prior to any *Miranda* warnings and because the results of polygraph examinations are deemed generally too unreliable to be admissible in criminal trials in Texas). Because no such ameliorating circumstances exist, I conclude, like the Court,[14] that the *Miranda* warnings "could [not] have served their purpose,"[15] and that the appellant's confession therefore should have been suppressed.

With these additional observations, I join the Court's opinion.

Filed:          December 17, 2008
Publish

---

[14] Majority opinion, at 15-20.

[15] *Seibert*, *supra*, at 617.